IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00964-WYD-CBS

HOME DESIGN SERVICES, INC.

      Plaintiff,

v.

TERRY TRUMBLE, and
JANELLE TRUMBLE,

      Defendants

---

## ORDER REGARDING PLAINTIFF'S MOTION TO AMEND/MODIFY SCHEDULING ORDER TO EXTEND DEADLINES AND RESCHEDULE FINAL PRETRIAL CONFERENCE

---

Magistrate Judge Shaffer

      PENDING before the court is Plaintiff Home Design Services, Inc.'s (hereinafter "Home Design") Motion to Amend/Modify Scheduling Order to Extend Deadlines and Reschedule Final Pretrial Conference (doc. # 46), filed on March 22, 2010. The instant motion seeks to extend the current discovery and dispositive motions deadlines for an additional 6o days and to reschedule the final pretrial conference currently set on the court's docket for July 8, 2010. Plaintiff contends that the requested extensions are necessitated by scheduling conflicts and a recently apparent need for additional discovery. Defendants Jerry and Janelle Trumble filed their Response and Objection to Plaintiff's Motion (doc. # 49) on April 1, 2010. In opposing Home Design's Motion to Amend/ Modify the Scheduling Order, Defendants argue that Plaintiff has not established the "good cause" required by Fed. R. Civ. P. 16(b), and suggest that the desired discovery "is neither necessary nor justified under the facts and circumstances of this case . . .

1

and adds nothing aside from additional unanticipated costs, fees and time to a straightforward case involving a single allegation of [copyright] infringement."

By Order of Reference to Magistrate Judge (doc. # 4), this matter was referred to this court to, *inter alia,* "enter a scheduling order meeting the requirements of D.C.COLO.LCivR 16.2 . . . and issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause." I have carefully considered the parties' briefs and the exhibits attached thereto, the entire case file, and applicable case law. Oral argument would not materially assist the court in its analysis of the issues presented. For the following reasons, Plaintiff's motion is denied.

## FACTUAL BACKGROUND

Home Design Services, Inc. initiated this action on April 27, 2009, by filing a Complaint that alleges a single violation of the federal Copyright Act of 1976, 17 U.S.C. §§ 501, *et seq*. More specifically, Plaintiff contends that the Trumbles violated the Copyright Act by designing, advertising and constructing a home which was copied largely from Home Design's registered original architectural work "entitled and advertised as the 'HDS-2802'" plan. *See* Complaint, at ¶¶ 7-9. The Complaint seeks to recover "such damages as [Home Design] has sustained in consequence of Defendants' infringement of [Home Design's] copyright . . . . and to account for all (a) [g]ains, profits and advantages derived by Defendants through such trade practices and unfair competition; and (b) [g]ains, profits and advantages derived by the Defendants through their infringement of [Home Design's] copyright."[1] The Trumbles insist that they did not

---

[1]On August 18, 2009, the parties filed a Stipulation for Dismissal Without Prejudice of Claims for Statutory Damages and Attorney's Fees (doc. # 23) in this matter.

infringe upon any works registered by Home Design and that the home in question "was hand drawn by Defendants and . . . not copied from any source."

On August 6, 2009, this court entered a Fed. R. Civ. P. 16(b) scheduling order that set deadlines for completing discovery, providing expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2), and filing dispositive motions. Counsel advised the court that they met, pursuant to Fed. R. Civ. P. 26(f), on June 10, 2009 and July 22, 2009, and exchanged Fed. R. Civ. P. 26(a)(1) disclosures on July 30, 2009. While the parties proposed a discovery cut-off of April 5, 2010 and a dispositive motion deadline of May 6, 2010, I shortened those deadlines to February 5, 2010 and February 26, 2010, respectively. This court also directed that affirmative experts should be designated on or before December 1, 2009, and rebuttal expert disclosed on or before January 4, 2010. With counsels' concurrence, I set this matter for a settlement conference on December 18, 2009.

In response to the court's questions during the scheduling conference, defense counsel indicated that her discovery plan would not require "very much" time because her clients planned to serve written discovery and take Plaintiff's deposition. When I posed the same question to Plaintiff's attorney, he anticipated receiving discovery responses from Defendants by the end of September and suggested that depositions of the parties would occur in "October, November or December depending when everyone's schedule would work." However, Plaintiff's counsel stated that "in these cases," the initial phase of discovery typically identifies new witnesses and information that precipitate the need for additional discovery.[2]

---

[2]In preparing this Order, the court refreshed its recollection by reviewing the audiotapes from the August 6, 2009 scheduling conference.

If the parties had commenced formal discovery immediately after their second Rule 26(f) conference on July 22, 2009,[3] the court's February 5, 2010 deadline provided six and a half months to complete discovery in a case that counsel predicated would require no more than a five-day jury trial. The court's decision to depart from the more extended discovery deadlines proposed by the parties was based, in part, on Home Design's litigation history and counsels' familiarity with the particular challenges posed by Plaintiff's theory of recovery. Since 2008, Home Design has filed 41 cases in the United States District Court for the District Colorado, each alleging copyright infringement. To date, none of those cases have proceeded to trial. Thirty of the 41 cases have settled in advance of trial and only a very few cases have progressed to the point of filing motions for summary judgment. Home Design's lead counsel, Anthony Lawhon, and the Trumbles' attorney, Amber Ju, have been opposing counsel in five of the 41 cases.

Home Design apparently served its first set of written discovery on July 24, 2009 and, after receiving one extension of time, Defendants served their responses on September 15, 2009. The Trumbles served their initial written discovery on November 11, 2009, and Home Design provided its responses on December 15, 2009, after obtaining its own short extension of time. On December 1, 2009, the Trumbles designated three experts pursuant to Fed. R. Civ. P. 26(a)(2), including an architect (Eugene C. Schmitt), a certified public accountant (Gregory Taylor), and a real estate appraiser (Jennifer L. Tiffin). Neither side noticed or took any

---

[3]Rule 26(d) of the Federal Rules of Civil Procedure provides that a party may seek discovery from any source after conducting the conference required by Rule 26(f) and may employ methods of discovery in any sequence. Arguably, the parties could have started formal discovery after the June 10, 2009 conference.

depositions prior to the unsuccessful settlement conference on December 18, 2009.

On January 14, 2010, Plaintiff filed an Unopposed Motion to Amend/Modify Scheduling Order to Extend Deadlines and Reschedule Final Pretrial (doc. # 36).  Mr. Lawhon advised the court that "the parties are in the process of scheduling depositions and finalizing discovery," but that he was scheduled for surgery on January 13, 2010 which would substantially restrict his activities for a period of 30 days thereafter.  Home Design requested an extension of discovery to March 22, 2010 and a new dispositive motion deadline of April 22, 2010.  Plaintiff also requested leave to serve an additional ten interrogatories and ten requests for production of documents.  I granted Plaintiff's unopposed motion and adopted the requested deadlines in a Minute Order (doc. # 38) dated January 22, 2010.

Exhibits submitted by the parties in conjunction with the instant motion place Home Design's request for relief in a fuller context.  In an e-mail to Mr. Lawhon on November 16, 2009, Ms. Ju asked for dates when a Home Design representative would be available for a Fed. R. Civ. P. 30(b)(6) deposition.  *See* Exhibit B attached to Defendants' Response and Objection to Plaintiff's Motion (doc. # 49-2).  Defense counsel claims that her November 16th e-mail went unanswered.  Ms. Ju renewed her request for deposition dates in a letter sent electronically to Mr. Lawhon on December 29, 2009.  *See* Exhibit E attached to Defendants' Response and Objection to Plaintiff's Motion (doc. # 49-5).  On January 6, 2010, one month before the close of discovery, Mr. Lawhon sent an e-mail to Ms. Ju in which he acknowledged that counsel "should start scheduling depos."  In the same e-mail, Mr. Lawhon suggested that a "45 day extension of discovery" would be necessary because of his impending surgery and convalescence.  Mr. Lawhon then observed that "even if we set all the clients' depos for the week after [his

convalescence ends], I'm probably going to have follow up discovery to do, and maybe more depos, so mid-March may not even be enough time." *See* Exhibit H attached to Defendants' Response and Objection to Plaintiff's Motion (doc. # 49-8). Notwithstanding his reservations, Plaintiff's counsel moved on January 14 for an extension of discovery until March 22, 2010. At the time Mr. Lawhon filed for an extension of time, deposition dates were still being cleared by the parties and no depositions had been formally set or noticed.

Discussions regarding deposition schedules continued after January 14, 2010. On January 18, 2010, Mr. Lawhon's assistant proposed taking the Trumbles' depositions on February 15-16, 2010, Mr. Taylor's deposition on February 17, 2010, and then Home Design's rebuttal expert's deposition on February 18, 2010. In the same e-mail, Mr. Lawhon's assistant suggested taking Plaintiff's Rule 30(b)(6) deposition and Chuck Schmitt's deposition in Florida on March 10-11, 2010. *See* Exhibit I attached to Defendants' Response and Objection (doc. # 49-9).

Ms. Ju's assistant responded to these overtures on January 20, 2010, stating that Ms. Ju "would like to first focus on scheduling the depositions of the parties and then attempt to schedule the depositions of experts" and that the Trumbles were holding March 9-11, 2010 as dates for their depositions. Later on January 20, 2010, Mr. Lawhon sent Ms. Ju another e-mail discussing deposition settings. In this communication, Mr. Lawhon observed that

> [I]f we can't take any depos in February, I am concerned we will need to ask for another extension . . . If you want the parties' depos done 3/9-11, and then want to wait to schedule expert depos, I think both our calendars will be booked through April. By my calculations, the 45-day extension I requested would expire around March 20 or so, which only gives us a little more than a week to finish discovery after the party depos, as you have things described. I'd like to explore options for working through all this when you are available.

*See* Exhibit I attached to Defendants' Response and Objection to Plaintiff's Motion (doc. # 49-9).

As of close of business on January 20, 2010, counsel for the parties had not finalized any depositions.

On January 27, 2010, Ms. Ju's assistant advised Mr. Lawhon's colleague that the Trumbles were not available for depositions during the week of February 15, 2010, but would be available on March 9-11, 2010. Later that same day, Mr. Lawhon's assistant advised that Mr. Lawhon "is coming to Colorado only 1 time" and so defense counsel could "release hold of entire week of 2/15." In the same e-mail, Mr. Lawhon's assistant proposed taking depositions on various dates in March. *See* Exhibit J attached to Defendants' Response and Objections (doc. # 49-10).

Home Design's rebuttal liability expert was deposed in Austin, Texas on February 16, 2010. Mr. and Ms. Trumble were deposed in Denver, Colorado on March 10 and 11, 2010, and Defendants' damages expert, Mr. Taylor, was deposed on March 10, 2010. Defendants' appraisal expert, Ms. Tiffin, was deposed on March 16, 2010, and their liability expert, Chuck Schmitt, was deposed on March 18, 2010. It would appear that by the discovery cut-off of March 22, 2010, the only contemplated deposition not taken was the Rule 30(b)(6) deposition of Home Designs' representative, Mr. Zirkel, which was canceled due to health complications attributable to Mr. Zirkel's surgery in early March.[4]

Home Design contends that an extension of the discovery cut-off is necessary in order to

---

[4]In their Response and Objection, the Trumbles concede that "Mr. Zirkel has been deposed multiple times in cases brought in the District of Colorado" and have advised the court that they will forego a deposition of Mr. Zirkel in this case if Plaintif's motion is denied.

obtain additional information regarding Defendants' overhead expenses that Mr. Taylor could

not provide during his deposition on March 10, 2010.  Plaintiff's counsel insists that he must

subpoena the Trumbles' accountant "for the underlying records and for an explanation" in order

to "critically examine the overhead expenses" cited by Mr. Taylor.  *See* Plaintiff's Motion to

Amend/Modify Scheduling Order (doc. # 46), at 4.  Home Design claims that it learned for the

first time during Defendants' depositions on March 10 and 11, that the Trumbles attended two

National Association of Home Builders trade shows in Las Vegas on unspecified dates and that

Defendants live approximately one mile from a Home Depot store that Mr. Trumble frequented

prior to building the subject house in 2006.  Mr. Trumble also testified that he knows two

individuals who have been named as defendants in other copyright infringement cases filed by

Home Design Services.  Plaintiff insists that additional time is necessary to conduct discovery on

these facts that may be relevant to the issue of whether the Trumbles had access to the 2802 plan

registered by Home Design.  Finally, Plaintiff would like to obtain additional discovery relative

to photographs produced in conjunction with Defendants' Sixth Supplemental Disclosure served

on March 17, 2010.

## ANALYSIS

Litigators, by necessity, are forced to wear multiple hats.  In their capacity as advocate,

counsel are expected to use the tools provided by the Federal Rules of Civil Procedure to obtain

 information essential to the proper litigation of all relevant facts and to eliminate surprise at

trial.  *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 682-83 (1958) ("Modern

instruments of discovery . . . together with pretrial procedures make a trial less a game of blind

man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest

practicable extent") (internal citations omitted).[5] *Cf. Basaldu v. Goodrich Corp.*, 2009 WL 1160915, *2 (E.D. Tenn. 2009) ("The purpose of the modern civil discovery rules is to get all of the proverbial cards on the table in advance of trial."); *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 2007 WL 4051179, *2 (S.D.N.Y. 2007) ("By requiring disclosure of all relevant information, the discovery rules allow ultimate resolution of disputed facts to be based *on full and accurate understanding* of true facts.") (emphasis in original). The discovery rules are also available to the parties and their advocates to increase the potential for settlement in advance of trial.

A litigator has equally important responsibilities as a case manager. For example, Rule 26(f)(3)(B) requires the parties to prepare a discovery plan that addresses "the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues." The parties' discovery plan should also reflect their proposals and views on "what changes should be made in the limitations on discovery imposed under [the Federal Rules of Civil Procedure] or by local rule, and what other limitations should be imposed." *See* Fed. R. Civ. P. 26(f)(3)(E). Rule 37(f)

---

[5]The Advisory Committee Notes to the 1983 Amendments to Rule 26 acknowledged that "the purpose of discovery is to provide a mechanism for making relevant information available to the litigants."

> "Mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation." . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved or the issues or values at stake.

permits the court to impose an award of reasonable fees and expenses if a party or its attorney "fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f)," *see* Fed. R. Civ. P. 37(f), and counsel may be sanctioned for being "substantially unprepared to participate" in a scheduling conference with the court. *See* Fed. R. Civ. P. 16(f). The importance of a well-considered case management plan has become even more apparent as the number of cases actually proceeding to trial continues to decrease. Counsel should have an interest in developing a discovery plan and managing the pretrial process with a view toward the most likely litigation outcomes, *i.e.,* settlement or disposition through motion.

Counsel's case management responsibilities should not been seen as antithetical to their role as advocate. The reality is that a well-managed case progresses through the discovery process more efficiently and cost-effectively. *Cf. Board of Regents of University of Nebraska v. BASF Corp.*, 2007 WL 3342423, *5 (D. Neb. 2007) ("The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense and removing contentiousness as much as practicable. If counsel fail in this responsibility – willfully or not – these principles of an open discovery process are undermined, coextensively inhibiting the courts' ability to objectively resolve their clients' disputes and the credibility of its resolution.") (internal citations omitted). *See also The Sedona Conference Cooperation Proclamation* (2008) (available at http://wwwthesedonaconference.org/content/tsc_cooperation_proclamation) (recognizing that while counsel are "retained to be zealous advocates for their clients, they bear a professional obligation to conduct discovery in a diligent and candid manner").

The court also has an independent responsibility for case management. "The desirability of some judicial control of discovery can hardly be doubted. Rule 16, as revised, requires that the court set a time for completion of discovery and authorizes various other orders affecting the scope, timing and extent of discovery and disclosures." *See* Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(f). *Cf. Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of Rule 16 are based on the "recognition that cases can move efficiently through the federal system only when courts take the initiative to impose and enforce deadlines"). As the Tenth Circuit has acknowledged,

> While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial . . . [T]here can be no doubt that subsection (f), added as part of the 1983 amendments to Rule 16 indicates the intent to give courts very broad discretion to use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior . . . but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.

*Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)).

All of the above elements are implicated by Home Design's instant motion. As this court noted in *Cassirer v. San Miguel County Board of County Commissioners*, 2009 WL 1844326, **5-6 (D. Colo. 2009), Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *See* Fed.R.Civ.P. 16(b)(4). *See also* D.C. COLO. LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court"). This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket. *Cf. Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting

that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial").  *See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

The "good cause" standard requires the moving party to show that despite his diligent efforts, he could not have reasonably met the scheduled deadline.  *See Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).  *See also* Advisory Committee Notes to 1983 Amendment to Fed. R. Civ. P. 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension").  The good cause standard "primarily considers the diligence of the party seeking the amendment."  *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) ("[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause").  *Cf. New York Life Insurance Co. v. Morales*, 2008 WL 2622875, *3 n.3 (S.D. Cal. 2008) (finding that defendant's failure to pursue available and clearly relevant discovery undercut his claim of reasonable diligence under Rule 16(b)); *Widhelm v. Wal-Mart Stores, Inc.*, 162 F.R.D. 591, 593 (D. Neb. 1995) (holding that parties are not entitled to relief from pretrial deadlines where those parties have been lax in conducting discovery); *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985) (holding that the movant had not established "good cause" under Rule

16(b) where counsel failed to immediately undertake discovery and sought a belated extension of pretrial deadlines).

Plaintiff's latest Motion to Amend/Modify the Scheduling Order cites *Quintana v. Edwards,* 2009 WL 1798219 (D. Colo. 2009) and the "six-part test for determining whether discovery should be reopened" set forth in *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). In *Smith*, the Tenth Circuit suggested that various factors would be relevant in reviewing decisions concerning whether discovery should be reopened, including:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Id.* at 169. Home Design's reliance on these cases seems to be misplaced. The appellate court in *Smith* upheld the dismissal of the plaintiff's case for failure to prosecute after concluding that the client's and counsel's failure to meet pretrial deadlines was the result of tactical decisions and not inadvertence. In *Quintana,* the plaintiff was originally proceeding *pro se* and counsel entered an appearance for the plaintiff approximately two months after the expiration of the discovery deadline. Thereafter, plaintiff's counsel waited nearly five months to file a motion to reopen discovery. The magistrate judge in *Quintana* expressed a disinclination "to condone Plaintiff's self-imposed exigency."

In this case, Plaintiff's counsel advised the court during the August 6, 2009 scheduling conference that he anticipated receiving responses to his written discovery in September and completing party depositions by December. In fact, Defendants served their responses to written discovery on September 15, 2009, and their expert disclosures on December 1, 2009. Plaintiff's

counsel had ample time to depose Defendants and their experts in advance of the settlement conference on December 18, 2009. Home Design now claims it requires an additional 60 days to complete discovery, in part because of new information that came to light during the Trumbles' depositions in March. However, it appears that Plaintiff's counsel did not even broach the subject of setting depositions until January 6, 2010, approximately one week before his scheduled surgery. *See* Exhibit H attached to Defendants' Response and Objection (doc. # 49-8). "[W]here a party fails to pursue discovery in the face of a court-ordered cutoff, as here, that party may not be heard to plead prejudice resulting from his own inaction." *Secord v. Cockburn*, 747 F. Supp. 779, 786 (D.D.C. 1990) (citation omitted). *See also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir. 1985) (denying plaintiff's request to reopen discovery when plaintiff had "ample time in which to pursue the discovery that it now claims is essential").

Plaintiff concedes that "[p]erhaps the most contested issue in this case is whether the Defendants illegally copied Home Design's HDS-2802 architectural plan."

> As part of its case-in-chief, Home Design may have to prove that the Defendants had "access" to the 2802. At this juncture, Home Design's evidence of access is the weakest link, for the Defendants have sworn they did not copy, see, or use the 2802 in any way.[6] As a result, Home Design must develop a plausible theory of which of the many ways the Defendants may have obtained access to the 2802.

*See* Plaintiff's Motion to Amend/Modify Scheduling Order (doc. # 46), at 4-5. After pursuing

---

[6]Defendants' deposition testimony could not have come as a surprise. The Trumbles' Answer, filed on May 26, 2009, denied the allegation that they had violated Home Design's copyright by "designing and constructing one or more residences which were copied largely or were exact duplicates of the 2802." In the Rule 16 Scheduling Order, the Trumbles took the position that "the plan for (sic) home at issue was hand drawn by Defendants and was not copied from any source."

this issue through written discovery, Home Design addressed the subject of access during Defendants' depositions.  Apparently, at those depositions, Plaintiff learned for the first time that the Trumbles had attended two National Association of Home Builders trade shows in Los Vegas and live approximately one mile from a Home Depot store in Montrose, Colorado which may have sold catalogues and plan magazines containing the 2802 plan.  Mr. Trumble also testified at his deposition that he was well acquainted with two other individuals in Montrose, Colorado who were themselves defendants in copyright litigation initiated by Home Design.

Without expressing any opinion as to the potential value of the desired discovery, it is clear that Plaintiff's predicament is the result of counsel's own tactical decisions and failure to pursue discovery in a timely manner.  Plaintiff's motion concedes that Defendants' "access" to the subject architectural plan has always been a significant component of Home Design's *prima facie* case and that "evidence of direct copying is often unavailable."  It should also be noted that Home Design's Complaint (filed on April 27, 2009) referenced the Trumbles' current home address in Montrose, Colorado.  Through written interrogatories answered on September 15, 2009, Plaintiff learned the Trumble's home address during the period 2002 - 2006.  Using those addresses and store locator information available on the Home Depot website, this court was able identify a Home Depot store in Montrose, Colorado within 2.2 miles of the Trumble's current residence and within 3.15 miles of the Trumble's residence in 2006.  It appears that Home Design simply failed to utilize in a timely way the information and investigative leads within its possession.

Certainly, Home Design was aware that it had participated in several National Association of Home Builders trade shows, including trade shows in Las Vegas, where it

distributed catalogues and plan magazines. Home Design also knows that its plans are published by third-party publishers and then sold in national outlets, including Home Depot. Plaintiff's motion cites cases holding that access can be established "[w]here a copyright plaintiff can show a defendant or its employee visited a trade show where the copyrighted work was displayed, or visited sites where the copyrighted work was posted." *See* Plaintiff's Motion to Amend/Modify Schedule (doc. # 46), at 7 n. 7. Home Design could have explored these subjects through written discovery and certainly could have scheduled Defendants' depositions well in advance of the discovery cut-off. *Cf. Video Professor, Inc. v. Amazon.Com, Inc.*, 2010 WL 882646, *3 (D. Colo. 2010) (denying a motion for additional discovery after concluding that "Plaintiff's showing of 'good cause' boils down to its belated, half-hearted and/or not well-organized efforts to attempt to tie down certain information it feels it might need"). I must conclude that Plaintiff's failure to do so was an oversight or a tactical mistake. Neither demonstrates "good cause" under Rule 16(b). *Cf. Turner v. Shering -Plough Corp.*, 901 F.2d 335, 341 n. 4 (3rd Cir. 1990) ("Rule 16 'scheduling orders are at the heart of case management,' and if they can be flouted every time counsel determines [he] made a tactical error in limiting discovery, 'their utility will be severely impaired.'") (quoting *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 19860)).

Plaintiff rationalizes its approach to discovery by suggesting that "it was far more sensible and productive to take the Defendants' depositions and narrow down the possible access points for them to have obtained the 2802," rather than "[s]ending subpoenas out to each and every possible source" for the architectural plans. *See* Plaintiff's Motion to Amend/Modify Scheduling Order (doc. # 46), at 14. This argument is, at best, disingenuous. Nothing in this

Order should be construed as endorsing or advocating a "scorched earth discovery" plan. *Id.* However, Rule 16(b) does not relieve counsel of their obligations as a case manager to utilize discovery methods in the most efficient and expedient manner. Counsel cannot be faulted for treating the Trumbles' depositions as a starting point for identifying other avenues for discovery, but the court can fairly question the decision to set the "starting line" so close to the discovery cut-off.

Plaintiff also suggests that additional discovery is necessary to subpoena records from and to depose Defendants' tax accountant in order to determine the nature of the "overhead expenses" cited in Mr. Taylor's expert report and deposition. Home Design contends that further discovery is necessary to "determine if those expenses are valid business expenses and have not been double-charged or improperly deducted." *See* Plaintiff's Motion to Amend/Modify Scheduling Order (doc. # 46), at 8. For the record, Defendants disclosed Mr. Taylor pursuant to Fed. R. Civ. P. 26(a)(2) and provided his written report to Home Design's counsel on or before December 1, 2009. Mr. Taylor was not deposed until March 10, 2009.

It appears that Plaintiff's counsel first expressed concern over the "overhead expenses" in Mr. Taylor's November 30, 2009 expert report in a letter to Ms. Ju dated January 11, 2010.[7] *See* Exhibit 2 attached to Plaintiff's Motion to Amend/Modify Scheduling Order (doc. # 46-2). It would appear that Mr. Lawhon waited six weeks to bring his concerns to the attention of defense counsel. In the same January 11th letter, Mr. Lawhon states that "[i]f a supplemental request for production is necessary, we can discuss it, although it remains my position you are required

---

[7]Mr. Lawhon initiated the "meet and confer" process under Fed. R. Civ. P. 37(a) less than 30 days before the February 5, 2010 discovery deadline was set to expire.

under Rule 26 to furnish this information because you are claiming that it supports your defense of the damage claims in this case." *Id.* To the contrary, Rule 26(a)(1)A)(ii) does not impose an independent obligation to physically produce documents. *See, e.g., Crouse Cartage Co. v. National Warehouse Investment Co.*, 2003 WL 21254617, *3 (S.D. Ind. 2003) (holding that Rule 26(a)(1) does not require a party to produce actual documents as part of the initial disclosure process). *See also DE Technologies, Inc. V. Dell Inc.*, 238 F.R.D. 561, 566 (W.D. Va. 2006), *aff'd in part, modified in part*, 2007 WL 128966 (W.D. Va. 2007) (while a party can merely identify documents in its Rule 26(a) disclosures, it would be required to physically produce those documents in response to a Rule 34 request). It appears counsel made no formal efforts under Fed. R. Civ. P. 34, 37, or 45 to obtain the desired documents prior to Mr. Taylor's deposition.

Plaintiff may argue that depositions costs were deferred in anticipation of a productive settlement conference on December 18, 2009 and in light of Home Design's success in settling similar claims in other cases. While I can appreciate the pragmatism underlying such a strategy, counsel's misplaced optimism does not equate to good cause under Rule 16(b). As the court noted in *Arnold v. Krause*, 232 F.R.D. 58, 65-66 (W.D.N.Y. 2004) (quoting *Lory v. General Electric Co.*, 179 F.R.D. 86, 88 (N.D.N.Y. 1998)), an

> unfounded believe that settlement was likely affords no basis for a finding of good cause. The possibility of settlement is ever present in virtually all civil cases. Only in the rarest of cases will such a possibility suffice to demonstrate good cause, particularly where, as here, the deadlines for disclosure were established after consultation with the parties . . . .

*Cf. Salvatore v. Pingel*, 2008 WL 4831440 (D. Colo. 2008) (finding that defendants had failed to establish good cause to extend discovery deadlines "because the defendants' strategy of delaying discovery for four months . . . to see whether a settlement conference would be successful

18

offered no basis for finding that the defendants acted with reasonable diligence and that the discovery deadlines could not have been met despite the defendants' diligent efforts"). The latter analysis is particularly appropriate in this case where the court set the settlement conference with the concurrence of counsel and in reliance upon counsels' stated expectation to complete key discovery in advance of the conference. *Cf. Rafer v. Pursley*, 2009 WL 1913272, *1 (N.D. Fla. 2009) (observing that "[w]hile the Court understands the importance of keeping litigation costs down, a meaningful settlement discussion would be the best way to minimize costs").

At the August 6, 2009 scheduling conference, counsel left the court with the distinct impression that essential discovery would take place before the December 18, 2009 settlement conference. A productive settlement conference requires that the parties have the essential information necessary for a thoughtful evaluation of the merits of their claims or defenses. *Cf. In re LaMarre*, 494 F.2d 753, 756 (6th Cir. 1974) (noting that settlement conferences are "an integral and vital part of the judicial process'). It is not unreasonable for the court to assume that the parties will pursue that discovery in a timely manner in advance of the settlement conference. The importance of settlement conferences as a case management tool cannot be under-estimated, particularly in the wake of a burgeoning civil docket. However,

> [t]he success of pretrial settlement conferences depends primarily on the preparedness of the participants. If the participants are unprepared, these conferences, rather than assisting in the resolution and management of the case, are simply cathartic exercises - the parties divulge their general feelings about the case, but neither party shares sharp analysis concerning its merits or provides the court with any reliable information for planning purposes. When participants are fully prepared, however, pretrial settlement conferences may be extremely productive. Prepared litigants are able to discuss the merits of the case cogently and negotiate settlement terms intelligently; furthermore, courts can rely upon these litigants' representations to manage their dockets. Given the important

> interests district courts have invested in pretrial settlement conferences, the
> prospect of unprepared litigants frustrating these conferences is particularly
> troubling.

*In re Novak*, 932 F.2d 1397, 1404 (11th Cir. 1991). Home Design inexplicably elected to delay

Defendants' depositions until after the settlement conference.[8] Plaintiff now wishes to pursue

lines of inquiry relating to "access" that would have been important considerations in the

evaluation of Home Design's claims and its settlement position.

I would not want the foregoing analysis to suggest a lack of sympathy for Mr. Lawhon's

medical exigencies. Plaintiff's motion is silent as to when counsel first learned that surgery

would be required or when the January 13, 2010 procedure was scheduled. The court is

troubled, however, by counsel's actions thereafter. Home Design's first Unopposed Motion to

Amend/Modify Scheduling Order (doc. # 36), filed on January 14, 2010, proposed a new

discovery cut-off of March 22, 2010; that date was not selected or imposed on the parties by the

court. Yet even before Mr. Lawhon filed his Unopposed Motion, counsel conceded in a January

6, 2010 e-mail to Ms. Ju that "even if we set all the clients' depos for the week after [he

completes his convalescence], I'm probably going to have follow up written discovery to do, and

maybe more depos, so mid-March may not even be enough time." *See* Exhibit H attached to

Defendants' Response and Objection. Mr. Lawhon's proposed discovery deadline of March 22nd

effectively precluded the possibility of "follow up written discovery . . . and maybe more

depos," once party and expert depositions were set for the weeks of March 8 and 15, 2010. In

---

[8]Here, where the Trumbles' credibility and effectiveness as witnesses at trial could be
pivotal to the outcome of the case, I am at a loss to understand why Plaintiff's counsel would not
take their depositions prior to a settlement conference, particularly since the claims and defenses
in this case do not lend themselves to disposition through summary judgment.

short, counsel pursued a discovery plan that almost certainly could not be accomplished within the new deadlines proposed by Home Design and set by the court. With the current motion, Plaintiff seeks relief from a problem largely of its own making. That does not equate to good cause under Rule 16(b).

Finally, I should respond to Home Design's argument that Defendants will not be unduly prejudiced by an extension of the discovery deadline because the case is not set for trial and because of any additional expense will be borne by Plaintiff, the party seeking further discovery. As for the latter argument, it ignores the expense that the Trumbles will have to incur in preparing for additional depositions. Home Design's motion contemplates the deposition of Defendants' accountant, and alludes to possible depositions of the Trumbles and Messrs. Sjoden and Musso. *See* Plaintiff's Motion to Amend/Modify Schedule (doc. # 46), at 11-12. There is no reason to think defense counsel would be less than thorough in preparing for those depositions, or that the attorney's fees incurred in connection with the depositions will be any less burdensome because defense counsel may not be taking the lead in asking questions. *Cf. Quintana v. Edmond*, 2009 WL 1798219, *2 (D. Colo. 2009) (observing that "[t]here can be no doubt that allowing Plaintiff to take additional discovery requires Defendants to incur additional and unanticipated expenses, even if just limited to interviews and will impact their ability to prepare for trial"). It is also incorrect to suggest that an extension of discovery is somehow more palatable in this case because a trial date has not been set. As counsel surely knows, Judge Daniel's standard procedure is to assign trial dates at or shortly after the final pretrial conference which is currently set for July 8, 2010. Moving back the discovery cut-off and the dispositive motion deadline by sixty days would necessitate a corresponding change to the final pretrial

conference date, which will inevitably push back the trial setting. I do not believe that Judge Daniel intended for his trial setting procedures to be exploited as a justification for successive extensions of time or to excuse a party's lack of due diligence.

Accordingly, for the foregoing reasons, Plaintiff Home Design Services, Inc. Motion to Amend/Modify Scheduling Order to Extend Deadlines and Reschedule Final Pretrial Conference (doc. # 46) is DENIED.

Dated this 9th day of April, 2010.

BY THE COURT:

*s/ Craig B. Shaffer*
_____
Craig B. Shaffer
United States Magistrate Judge