IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00964-WYD-CBS

HOME DESIGN SERVICES, INC.
     Plaintiff,
v.

TERRY TRUMBLE, and
JANELLE TRUMBLE,
     Defendants.

---

## ORDER REGARDING PENDING MOTIONS

---

Magistrate Judge Shaffer

     THIS MATTER presents this court with the following pending motions:  (1) Defendants'
Fed. R. Evid. 701 and Fed. R. Civ. P. 26 Motion to Preclude James Zirkel from Offering Expert
Opinions at Trial (doc. #70), filed on June 18, 2010; (2) Defendants' Rule 702 Motion to
Exclude Opinions of Expert Kevin Alter (doc. #72), filed on June 18, 2010; (3) Defendants'
Motion to Strike Opinions of Plaintiff's Rebuttal Expert Kevin Alter (doc. #73), filed on June 18,
2010; (4) Plaintiff's Motion to Exclude, In Part, Testimony and Report of Defendants' Expert
Gregory Taylor (doc. #82), filed on June 30, 2010; and (5) Plaintiff's Motion to Exclude, In Part,
Testimony and Report of Defendants' Expert Eugene Schmitt (doc. #83), filed on June 30, 2010.
After receiving no less than seven extensions of time, briefing on the foregoing motions closed
on October 11, 2010 when Plaintiff Home Design Services, Inc. waived its right to file reply
briefs in support of its motions.  *See* Plaintiff's Notice of Election of Use of Oral Argument in
Lieu of Filing Reply Briefs (doc. #154).  The court entertained oral argument during a hearing on
October 26, 2010.

1

By Order of Reference to United States Magistrate Judge (doc. #4), this matter was referred to this court to, *inter alia*, "hear and determine pretrial matters, including discovery and other non-dispositive motions."[1]  The motions at issue were referred to the magistrate judge with separate orders of reference (docs. #74 and #134) on June 21, 2010 and September 15, 2010.

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may designate a magistrate judge to conduct hearings and submit proposed findings of fact and recommendations with respect to any dispositive motion.  The Tenth Circuit has held that "[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when they have an identical effect."  *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988)).  During the October 26, 2010 hearing, this court suggested that it might be necessary to address the pending motions with a report and recommendation rather than an order, given the statutory limitations on my authority as a magistrate judge.

Since that hearing, my research has not revealed any controlling Tenth Circuit precedent classifying as dispositive a motion to strike expert opinions.  However, several courts have held that a motion to strike expert opinion is non-dispositive where an unfavorable ruling would not be determinative of the plaintiff's underlying claim.  *See, e.g., Hawkins v. Waynesburg College*, 2007 WL 2119223, at *1 n. 1 (W.D. Pa. 2007); *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450 (D.N.J. 1998).  *But see Scheierman v. San Luis & Rio Grande Railroad,*

---

[1] *See* 28 U.S.C. § 636(b)(1)(A) ("a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information by the defendant, to suppress evidence in a criminal case, to dismiss for failure to state a claim upon which relief can be granted and to involuntarily dismiss an action."

*Inc.*, 2006 WL 5207239, at *2 (D. Colo. 2006) (after determining that the pending motions to strike experts were potentially dispositive, treated the magistrate judge's rulings as recommendations to be reviewed *de novo*).

The court has carefully considered the pending motions and related briefs and exhibits, the oral arguments of counsel, the entire court file and the applicable case law, and is sufficiently advised in the premises.  As explained in more detail below, my rulings on the pending motions will have no dispositive effect on Plaintiff's claims.  *See also Stromback v. New Line Cinema*, 384 F.3d 283, 295 (6th Cir. 2004) (noting that expert testimony is not a requisite for a copyright infringement case).  Accordingly, the court enters the following Order.

## FACTUAL BACKGROUND

Plaintiff Home Design Services, Inc. ("Home Design") initiated this action on April 27, 2009, alleging a single violation of the federal Copyright Act of 1976, 17 U.S.C. §§ 501, *et seq*. More specifically, Plaintiff contends that Terry and Janelle Trumble violated the Copyright Act by designing, advertising and constructing a home which was copied largely from Home Design's registered original architectural work "entitled and advertised as the 'HDS-2802'" plan. *See* Complaint, at ¶¶ 7-9.  James Zirkel, the principal and owner of Homes Design Services, Inc., claims that he created the HDS-2802 design "in or around 2000" for a client of Home Design Services, however the certificate of registration attached as Exhibit 2 to the Complaint has an effective date of registration of March 4, 2009.  The Complaint seeks to recover "such damages as [Home Design] has sustained in consequence of Defendants' infringement of [Home Design's] copyright . . . . and to account for all (a) [g]ains, profits and advantages derived by Defendants through such trade practices and unfair competition; and (b) [g]ains, profits and

advantages derived by the Defendants through their infringement of [Home Design's] copyright."[2]

The Trumbles insist that they did not infringe upon any works registered by Home Design and that the home in question which serves as their personal residence "was independently designed and constructed by Terry Trumble based on his family's lifestyle and functional needs."  *See* Defendants' Response in Opposition to Plaintiff's Motion to Exclude, In Part, Testimony and Report of Defendants' Expert Eugene Schmitt (doc. #149), at 2.  More specifically, Defendants challenge the originality of the HDS-2802 design and contend that neither the distinguishing features of the plan nor the selection and combination of design elements are original.  *See* Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (doc. #68), at 2-3.

On August 6, 2009, this court entered a Fed. R. Civ. P. 16(b) scheduling order that set deadlines for completing discovery, providing expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2), and filing dispositive motions.  While the parties proposed a discovery cut-off of April 5, 2010 and a dispositive motion deadline of May 6, 2010, I shortened those deadlines to February 5, 2010 and February 26, 2010, respectively.  This court also directed that affirmative experts be disclosed on or before December 1, 2009, and rebuttal experts be designated on or before January 4, 2010.

On or about November 11, 2009, Defendants disclosed the expert report (doc. #83-1) prepared by Eugene C. Schmitt, AIA Emeritus.  The Trumbles state that Mr. Schmitt will offer

---

[2]On August 18, 2009, the parties filed a Stipulation for Dismissal Without Prejudice of Claims for Statutory Damages and Attorney's Fees (doc. #23) in this matter.

opinions as to the

> a) the originality, or lack thereof, of the Home Design Service, Inc. . . . plan at
> issue; b) identification of the protectable elements, if any, of Plaintiff's plan; c)
> identification and filtering of non-protectable elements of the plan at issue; d)
> identification of scenes a faire; e) identification and filtering of non-protectable
> elements of the plan at issue;[3] f) identification of architectural similarities and
> differences of the plan at issue and the plan utilized to construct the Trumble
> home and identification of similarities and differences of the plan at issue and the
> as-built Trumble home; g) identification of influences of common market forces
> and cross pollination of design ideas and the scope of the public domain.

*See* Defendants' Response in Opposition to Plaintiff's Motion to Exclude, In Part, Testimony
and Report of Defendants' Expert Eugene Schmitt (doc. #149) at 2-3.  In summary, Mr.
Schmitt's report concludes that "most of the distinguishing features" of the Home Design floor
plan "are neither unique nor original" and that many of the elements in the HDS-2802 design
"must be regarded as common in the marketplace and therefore part of the public domain."  Mr.
Schmitt was deposed in this action on March 18, 2010.

Defendants disclosed their second expert, Gregory B. Taylor, on or about November 30,
2009.  According to his report (doc. #82-1), Mr. Taylor's firm was retained to prepare
"computations and analyses concerning the economic losses alleged by Home Design Services,
Inc."  The Taylor report concludes that if liability on the part of the Trumbles is assumed,
"reasonable damages . . . based on the cost of plans, project revenues, direct expenses, and
allocated expenses" would be $808.00.  Plaintiff's counsel deposed Mr. Taylor on March 10,
2010.

Plaintiff disclosed its designated rebuttal expert, Kevin S. Alter, on or about December

---

[3]While it appears to this court that subparts (c) and (e) are duplicative, I have quoted the
cited passage exactly as it appears in Defendants' responsive brief.

30, 2009.  According to his report (doc. #72-1), Professor Alter was "asked to opine on whether

the Trumble design appears to have been copied or derived from the plans by [Home Design

Services. Inc.]" and "to review the Expert Report of Eugene C. Schmitt, AIA Emeritus, with

regard to the matter of *Home Design Services, Inc. v. Terry Trumble, et al.*."  Professor Alter's

report opines "that the above-mentioned design by Trumble was either copied or derived from

the design by [Home Design Services]" and "that there exists a substantial similarity based on

the arrangement, selection and coordination of the vast majority of each design respective

architectural features[.]"  More specifically, Plaintiff states that Professor Alter will explain "in

painstaking detail why" the differences identified in the Schmitt report are immaterial and will

identify "the overwhelming similarities evident in the respective plans themselves."  *See*

Plaintiff's Response to Defendants' Rule 702 Motion to Exclude Opinions of Expert Kevin Alter

(doc. #132), at 3.  The Trumbles' attorney deposed Mr. Alter on February 16, 2010.

## ANALYSIS

The pending motions must be considered against the backdrop of copyright law.  The

1990 Architectural Works Copyright Protection Act defines an "architectural work" as

> the design of a building, as embodied in any tangible medium of expression,
> including a building, architectural plans or drawings.  The work includes the
> overall form as well as the arrangement and composition of spaces and elements
> in the design, but does not include individual standard features.

17 U.S.C. § 101.  *See also Intervest Construction, Inc. v. Canterbury Estate Homes*, 554 F.3d

914, 919 (11th Cir. 2008) (recognizing that "creativity in architecture frequently takes the form of

a selection, coordination, or arrangement of unprotectible elements into an original, protectible

whole").  "[W]hile all house plans obviously share common features, some designs give

particular homes a . . . distinguishing look and feel that is subject to copyright protection."

6

*Nelson Design Group, LLC v. Puckett*, 2009 WL 2254902, at *1 (E.D. Ark. 2009).

The copyright laws protect originality, but that protection does not extend to general concepts or functionally determined elements. *Frank Betz Associates, Inc. v. J.O. Clark Construction, LLC*, 2010 WL 2253541, at *8 (M.D. Tenn. 2010). "[O]ne does not violate the copyright in another simply because there is a similarity between the two." *La Resolana Architects, P.A. v. Reno, Inc.*, 555 F.3d 1171, 1179 (10th Cir. 2009) (finding no copyright violation after concluding that the differences between the subject plans "so outweigh any similarities that the similarities are inconsequential within the total context of the work"). To the contrary, courts have recognized that a party is entitled to only a "thin" copyright where the work in question, such as an architectural design, represents a compilation of pre-existing ideas or standard features. *See, e.g., Intervest Construction, Inc. v. Canterbury Estate Homes. Inc.*, 554 F.3d at 919; *Wood v. Cendant Corp.*, 2006 WL 964749, at *7 (N.D. Okl. 2006). *See also Trek Leasing, Inc. v. United States*, 66 Fed Cl. 8, 18 (Fed. Cl. 2005) (holding that plaintiff's architectural work had some original elements but warranted a "thin" copyright because the work "[took] much from other sources"). Protection for a thin copyright may extend only to virtually identical copying. *See Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003). *Cf. Trek Leasing, Inc. v. United States*, 66 Fed. Cl. at 19 (where plaintiff's architectural work merited only a "thin" copyright, it was protected only from "nearly verbatim copying or a showing of 'supersubstantial similarity'").

To prevail on its claim of copyright infringement, Home Design must show that it possesses a valid copyright and that the Trumbles copied protectable elements of that copyrighted work. *See County Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir.

1996).  *Cf. Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534

(6th Cir. 2004); *Home Design Services, Inc. v. B&B Custom Homes, LLC*, 2007 WL 4350864, at

*1 (D. Colo. 2007) (Daniel, J.).

     "Copyright ownership is demonstrated by establishing proof of originality,

copyrightability, and compliance with statutory formalities."  *Javelin Investments, LLC v.*

*McGinnis*, 2007 WL 781190, at *3 (S.D. Tex. 2007) (citing *Norma Ribbon & Trimming, Inc. v.*

*Little*, 51 F.3d 45, 47 (5th Cir. 1995)).  The "originality" element requires that "the work was

independently created by the author . . . and that it possesses at least some minimal degree of

creativity."  *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1373 (10th Cir. 1997) (nothing that

originality is not a "stringent" requirement).  *See also Feist Publications, Inc. v. Rural Telephone*

*Service Co., Inc.*, 499 U.S. 340, 345 (1991) (noting that "even a slight amount [of creativity] will

suffice" to establish originality under the copyright laws; "[t]he vast majority of works make the

grade quite easily, as they possess some creative spark, no matter how crude, humble, or obvious

it might be"); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 4068885, at *3 (W.D. La.

2010) (noting that for purposes of determining originality, "the requisite level of creativity is

extremely low").  Home Design's claim of originality is the subject of Plaintiff's contested

Motion for Partial Summary Judgment (doc. #64).

     The second element of Plaintiff's *prima facie* case encompasses two discrete inquiries:

(1) whether the Defendants, as a factual matter, copied elements of the HDS-2802 plan; and (2)

whether, as a mixed issue of fact and law, those copied elements are protected expression and of

such importance that the improper appropriation is actionable.  *See, e.g., Gates Rubber Co. v.*

*Bando Chemical Industries, Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993) (citing *Arnstein v. Porter*, 154

8

F.2d 464, 472-73 (2d Cir. 1946)); *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at \*8 (N.D. Tex. 2007) ( "The requirement to show 'probative similarity' to support an inference of copying is distinct from the finding of 'substantial similarity' required for a finding of infringement."). Plaintiff may prove copying as a factual matter by "establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." C*ounty Kids 'N Slicks, Inc. v. Sheen*, 77 F.3d at 1284. *See also Positive Black Talk Inc. v. Cash Money Records Inc.*, 394 F.3d 357, 368 n. 7 (5th Cir. 2004) (noting that six federal circuits, including the Tenth, have adopted the term "probative similarity" to distinguish the similarity needed to prove factual copying from the similarity required to find that the copying is legally actionable), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1246 (2010).

Factual or "probative" copying may be determined when the two works at issue, viewed as a whole, bear sufficient similarity that it could be inferred the challenged work was copied "because one would not expect such similarities to arise independently." *Id.* at 367-68. While Home Design must show more than the "bare possibility" that the Trumbles had access to the HDS-2802 plan, it may establish copying as a factual matter by demonstrating that the copyrighted work and the alleged infringing work are "strikingly similar." *La Resolana Architects, P.A. v. Reno, Inc.*, 555 F.3d at 1178-1179 (a party can sustain this burden by showing that the similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter precluded").

Courts have held that expert testimony may assist the jury in determining whether sufficient probative similarity exists to warrant a conclusion that the alleged infringer "actually

copied" the protected work.  *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Company, Inc.*, 290 F.3d 548, 562 (3rd Cir. 2002).

> "[E]xpert testimony may be used to assist the fact finder in ascertaining whether the defendant had copied any part of the plaintiff's work.. . . . To this end, the two works are to be compared in their entirety . . . [and] in making such comparison resort may properly be made to expert analysis."

*A Slice of Pie Productions v. Wayans Brothers Entertainment*, 487 F. Supp.2d 33, 38 (D. Conn. 2007) (quoting *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992)).  *See also Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992) (holding that actual copying can be establish with indirect evidence "including access to the copyrighted work, similarities that are probative of copying between the works and expert testimony").

Even if a plaintiff demonstrates factual or "probative" copying, liability for copyright infringement will attach only where protected elements of a copyright are copied, which in turn requires a finding of  "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d at 1180.  Copyright laws do not protect an "idea," but rather an original "expression of an idea." *Cf. Trek Leasing, Inc. v. United States*, 66 Fed. Cl. at 12 ("[b]ecause a copyrighted work may consist of both protected and unprotected elements, a finding of infringement is not appropriate where the similarities arise only with respect to unprotected elements of the creator's work").  For example, elements that are indispensable as a practical matter or at least standard in the treatment of a given idea are not protected by copyright.  *See Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d at.765-66.  Copyright protection is further constrained by the merger doctrine[4] and by

---

[4]The merger doctrine will preclude copyright protection where an idea is susceptible to such a limited number of forms of express that the idea and its expression are said to "merge."

the doctrine of *scenes a faire.*[5]  *Trek Leasing, Inc. v. United States*, 66 Fed. Cl. at 14.

The Tenth Circuit has held that the traditional test for "substantial similarity" considers whether the challenged work is so similar to the protected work that an ordinary reasonable person "would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value."  Co*unty Kids 'N Slicks, Inc. v. Sheen*, 77 F.3d at 1288.  *Cf. Home Design Services, Inc. v. David Weekley Homes, LLC*, 548 F. Supp. 2d 1306, 1313 (MD. Fla. 2008) (noting that in evaluating architectural home designs, "modest dissimilarities are more significant that they may be in other types of art works" because "there are only a finite number of ways a rectangle can be divided into bedrooms, baths, kitchen living room, closets and so on").

While expert testimony may be appropriate in addressing the issue of "probative" copying, a finding of substantial similarity turns on a lay-observer's opinion.  *See Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4065465, at *10 (S.D. Tex. 2010).  *Cf. Rottlund Company, Inc. v. Pinnacle Corp.,* 452 F.3d , 726, 731 (8th Cir. 2006) ( noting that "[e]xpert opinion and analytical dissection are not appropriate to establish or rebut similarity of expression"); *Kindergartners Count, Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1231-32 (D. Kan. 2003) (holding that the opinions of plaintiff's expert witness were not admissible on the issue of

---

"The merger doctrine is applied as a prophylactic device to ensure that courts do not unwittingly grant protection to an idea by granting exclusive rights to the only, or one of only a few, means of expressing that idea."  *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1145 (10th Cir. 2009).

[5]"Under the '*scenes a faire* doctrine,' expressive elements of a work are not entitled to copyright protection if they 'are standard, stock or common to a particular topic, or . . . necessarily follow from a common theme or setting.'"  *Fisher v. United Feature Syndicate, Inc.*, 203 F.3d 834, at *3 (10th Cir. 2000) (Table).

substantial similarity).

> Although expert opinion evidence is admissible in connection with the first step of the substantial similarity analysis to show *similarity of ideas*, analytical dissection and expert opinion are not called for under the second step in which substantial *similarity of expression* is measured by a different standard - the response of the ordinary, reasonable person.

*Hartman v. Hallmark Cards, Inc*., 833 F.2d 117, 120 (8th Cir. 1987) (emphasis in original).  *Cf.*

*Richmond Home Management, Corp. v. Raintree, Inc.*, 1994 WL 98922, at *5 (D. Minn. 2004)

(holding that the substantial similarity test does not consider "whether there are differences in

detail between the copyrighted and accused items when subject to minute scrutiny, but whether

the accused item is so similar to plaintiff's that an ordinary lay person would conclude that one

copied from the other").

I.      *Motions Challenging Disclosed Expert Witnesses*

Several of the motions referred to this court implicate Rule 701 of the Federal Rules of

Evidence.  In successive motions and response briefs, the parties have exhaustively and

repetitively addressed the requirements of Rule 701.[6]  The court is left to wonder how much time

and money might have been saved by avoiding this duplicative briefing.

Rule 702 provides that "[i]f scientific, technical or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training or education, may testify thereto

in the form of an opinion or otherwise."  The Rule imposes three requirements for the admission

of expert testimony.  First, the expert must be qualified by specialized knowledge, skill,

_____

[6]The briefs and exhibits filed in connection with the pending motions totaled 676 pages.

experience, training or education to testify on the subject matter of his or her testimony.  Second, the testimony must be "'based upon sufficient facts or data,' 'the product of reliable principles and methods,' and the product of the reliable application of these principles and methods to the facts of the case." *Cook v. Rockwell International Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006).  Finally, the proffered expert testimony must be relevant to an issue in the case and thereby assist the jury in its deliberations.  While the district court performs an important gatekeeping function in assuring that each of these prerequisites is satisfied, Rule 702 mandates a "liberal standard" for the admissibility of expert testimony.  *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995).

The proponent of expert testimony has the burden of establishing the admissibility of the expert's opinions under Rule 702.  *In re Breast Implant Litigation*, 11 F. Supp. 2d 1217, 1222 (D. Colo. 1998).  *See also Oddi v. Ford Motors Co.*, 234 F.3d 136, 144 (3rd Cir. 2000) (the proponent of expert testimony must satisfy Rule 702 requirements by a preponderance of proof). The decision to admit or exclude expert testimony is reviewed for abuse of discretion.  *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997).

Rule 702 does not impose an "overly rigorous" requirement of expertise, recognizing that expertise may be acquired through a broad range of experience, skills or training.  *See United States v. Velasquez*, 64 F.3d 844, 849 (3rd Cir. 1995).  The trial court should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court.  *See Holbrook v. Lykes Brothers Steamship Co., Inc.*, 80 F.3d 777, 782 (3rd Cir. 1996).  The Tenth Circuit has acknowledged that "[a]s long as an expert stays 'within the reasonable confines of his subject

area,' our case law establishes 'a lack of specialization does not affect the admissibility of [the

expert] opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965,

969 (10th Cir. 2001) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

Although an expert witness is permitted wide latitude to offer opinions, including those

which are not based on first-hand knowledge or observation, the opinions must have a reliable

basis.  Under Rule 702, admissible expert testimony must be based on "actual knowledge and not

'subjective belief or unsupported speculation.'" *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 780

(10th Cir. 1999); *Wilson v. Petroleum Wholesale, Inc.*, 904 F. Supp. 1188, 1190 (D. Colo. 1995).

An expert witness who relies solely or primarily on experience "must explain how that

experience leads to the conclusion reached, why that experience is a sufficient basis for the

opinion, and how that experience is reliably applied to the facts." *See* Advisory Committee

Notes to the 2000 Amendments to Fed. R. Evid. 702.  A party cannot sustain its burden under

Rule 702 simply by asking the court to "tak[e] the expert's word for it." *Id. Cf. United States v.

Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("[I]t remains a basic foundation for admissibility

that the '[p]roposed [expert] testimony must be supported by appropriate validation - *i.e.,* good

grounds, based on what is known.'").  A trial court has considerable discretion in determining

whether particular expert testimony is reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

137, 152 (1999), *as superseded by* Fed. R. Evid. 702 (Dec. 1, 2000).

No single factor should be dispositive in weighing the reliability of an expert's opinions.

*Ruiz-Troche v. Pepsi Cola of Puerto Rico*, 161 F.3d 77, 85 (1st Cir. 1998).  Ultimately, the

court's inquiry must focus on three areas: (1) whether the expert's testimony is based on

sufficient facts or data; (2) whether the expert used reliable principles and methodologies; and

(3) whether the expert applied these principles and methods reliably to the facts of the case. *Cook v. Rockwell International Corp.*, 580 F. Supp. 2d at 1085. If the court concludes that an expert's testimony satisfies these evidentiary requirements of reliability, "it is up to the jury to decide whether the expert used the best or most reliable methodology, what weight to accord to his testimony and which of competing experts' opinions should be credited." *Id*.

The requirement of reliability is "lower than the merits standard of correctness." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3rd Cir. 1994). The goal under Rule 702 is reliability, not certainty. "[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the scientist's methods, if there are good grounds for the expert's conclusion, it should be admitted." *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Heller v. Shaw Industries*, 167 F.3d 146, 152-53 (3rd Cir. 1999)). Any perceived flaws in an expert's testimony are more properly "tested in the crucible of the adversarial system," and do not provide justification "for truncating that process." *Cf. United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996).

Although an expert may be qualified and his or her opinions considered reliable, admissibility still requires that the opinions be relevant. The court must consider "whether expert testimony . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)).

"Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Cook v. Rockwell International Corp.*, 580 F. Supp. 2d at 1083 (quoting *Robinson*

*v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)).

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross examination.  Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

*Bonner v. ISP Tech., Inc.*, 259 F.3d at 929-30.  *Cf. Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("It is the role of the adversarial system, not the court, to highlight" questions relating to the bases and sources of an expert's opinions); *Biomet Orthopedics, Inc. v TACT Medical Instruments, Inc.*, 2004 WL 5499505, at *4 (D. Kan. 20004) (acknowledging that the court's role as gatekeeper is not to serve as a substitute for the adversary system).

    A.    <u>Plaintiff's Motion to Exclude, In Part, Testimony and Report of Defendant's Expert Eugene Schmitt</u>

While Home Design generally attacks Mr. Schmitt's "entire report" because of "his use of unreliable data and a misapplication of legal definitions and concepts," the primary thrust of Plaintiff's Motion to Exclude (doc. #83) is directed toward Mr. Schmitt's opinions regarding the "originality" of the HDS-2802 plan.  Home Design argues that these opinions on originality are based upon a "marketplace" analysis that is factually unreliable and predicated on the witness' misconception of the concepts of "originality" and "uniqueness" in copyright law.  Home Design further contends that Mr. Schmitt is not qualified to render opinions relating to the "housing marketplace and the 'stock plan' service industry."  Accordingly, Plaintiff moves to strike these specific opinions as violative of Rule 702 and *Daubert*.

Mr. Schmitt's report generally addresses the originality of the HDS-2802 plan, and the similarities and dissimilarities between the HDS-2802 plan and the Trumbles' residence.  Mr.

Schmitt's opinions relating to originality involve the "identification of original elements, if any, of the Plaintiff's architectural work; and consideration of the works of others" which are appended to the report.   *See* Expert Report of Eugene C. Schmitt (doc. #83-1), at Section A.2. Mr. Schmidt further suggests that the HDS-2802 plan was influenced by market factors which undermine Plaintiff's claim of originality.

> Builders must . . . accept land use regulations, zoning requirements and lot sizes imposed by others.  The resulting "buildable envelope" found on a given site has a strong impact on the design of a home to efficiently and economically utilize the site. . . . The common lifestyle of buyers in the market defines the "product" offered by builders; and explains the very high degree of sameness found among the stock home plans drafted by residential designers who specialize in serving those builders. . . . Accordingly, few stock plans are truly original due to the cross-pollination of design ideas resulting from these collective influences.

*Id.* at Section B.

In Section D.2 of his Report, Mr. Schmidt states that "the most significant features of the HDS-2802 floor plan . . . are representative of a trend in the Mid-Florida market . . . which emerged in the late nineties and early two thousands [and] . . . was triggered by the development of planned communities."  According to Mr. Schmidt, "[s]everal of these communities are in the Orlando area and likely influenced the 2802 floor plan."  In the same section of his report, Mr. Schmidt compares the HDS-2802 floor plan "with several floor plans by others which illustrate the trend described above," and concludes that "[t]he selection of standard functional elements is substantially similar in each of the plans illustrated."  After comparing Home Design's plan to cited "similar works of others," Mr. Schmidt concludes that "the most distinguishing features of the HDS-2802 floor plan . . . are neither unique nor original to the subject HDS floor plan."  *Id.* at Section G.1.

Plaintiff argues that Mr. Schmitt's opinions regarding the originality of the HDS-2802

design are both unreliable and inadmissible based upon the home designs he selected as representative of the relevant marketplace and included as Figures 1 and 1.1 in his report.  Mr. Zirkel claims he created the HDS-2802 design in or around 2000.  *See* Declaration of James Zirkel (doc. #64-1) attached to Plaintiff's Motion for Partial Summary Judgment.  While Defendants dispute Mr. Zirkel's claimed date of creation, they have not pointed to any facts that directly refute Mr. Zirkel's chronology.  *See* Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (doc. #68), at pp. 3 and 5.  Indeed, Mr. Schmitt conceded during his deposition that he did not know if any of the home designs he included in Figure 1 were created before or after the creation of the HDS-2802 design.  *See* Deposition of Eugene Schmitt, at p. 107-109, attached as Exhibit 2 (doc. #83-2) to Plaintiff's Motion to Exclude.  Yet, Mr. Schmitt's opinions regarding the originality of the HDS-2802 design implicitly rely upon his understanding of a "marketplace" exemplified by designs that clearly post-date the creation of the HDS-2802 plan.  In short, the factual assumptions that form the basis for Mr. Schmidt's opinions on originality are not tied to the relevant facts of this case in a reasonable way.

An expert's opinions must be both reliable and relevant.  The expert's testimony must be "sufficiently tied to the facts of the case [so] it will aid the jury in resolving a factual dispute." *Abold v. City of Black Hawk*, 2005 WL 5807816, at *3-4 (D. Colo. 2005) (excluding a proffered expert whose proposed opinions were "in essence, a subjective belief consisting of unsupported speculation that [was] not tied to the facts of the case").  *Cf. United States v. Mamah*, 332 F.3d 475, 478  (7th Cir. 2003) (acknowledging the need for "a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support").

Although Mr. Schmitt is permitted to make assumptions in the course of forming his

18

opinions, those assumptions still must have a sufficient factual foundation.  *Elcock v. Kmart Corp.*, 233 F.3d 734, 755-76 n. 12 (3rd Cir. 2000).

> In order to "fit," the expert's testimony must in fact assist the fact-finder, by providing it with relevant information necessary to a reasoned decision of the case.  An expert who renders an opinion based on factual assumptions not present in the case, "cannot be said to 'assist the trier of fact,' as Rule 702 requires.

*Edison Wetlands Association, Inc. v. Akzo Nobel Chemicals, Inc.*, 2009 WL 5206280, at *2 and 5 (D.N.J. 2009) (noting that a court must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert).  *Cf. Fanning v. Sitton Motor Lines, Inc.*, 2010 WL 4261476, at *7 (D. Kan. 2010) ("to satisfy the strictures of *Daubert*, an expert may not base his or her testimony upon assumptions that are not supported by the evidence").

Here, Mr. Schmitt illogically suggests that the HDS-2802 design is not original because it was "likely influenced" by designs or floor plans that post-date Mr. Zirkel's creation.  In short, there is simply too great an analytical and temporal gap between the illustrative designs that Mr. Schmitt relies upon and the "originality" opinion that he would offer at trial.  *Cf. Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (noting that "expert opinions 'must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation'").  I conclude that the opinions set forth in Sections D.2 and G.1 of the Schmitt report do not satisfy the requirements of Rule 702 and should be excluded from trial.

Plaintiff also has moved to strike the opinions set forth in Section F and Section G.3 of the Schmitt report, citing references in those sections to the phrases "works of others" and "the marketplace . . . [and] the public domain."  In Sections F and G.3, Mr. Schmitt provides a "conceptual analysis" of various unprotected architectural elements that he claims to find in the

19

HDS-2802 design.

While experts should not be permitted to offer legal opinions regarding the issue of originality, *cf. Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4065465, at *13, Section F and Section G.3 of the Schmitt report, and the opinions contained therein, may aid and assist the jury in "deciphering" the architectural plans at issue. *KB Home v. Antares Homes, Ltd*, 2007 WL 1893370, at *10 (N.D. Tex. 2007). *Cf. Janel Russell Designs, Inc. v. Museum Reproductions, Inc.*, 2001 WL 1631331, * at 2 (D. Minn. 2001) (holding that expert testimony is admissible to the extent that it relates to the "probative" similarity element and addresses the similarity of ideas). Section F and Section G.3 address architectural concepts or elements that are directly relevant to the issues in this case. *Cf. Trek Leasing, Inc. v. United States*, 66 Fed. Cl. at 15 (recognizing that expert testimony is admissible to determine if architectural elements at issue are within the public domain or *scenes a faire*). I further find that Mr. Schmitt is qualified to render these opinions. *Cf. The Harvester, Inc. v. Rule Joy Trammell N Rubio, LLC*, 2010 WL 2653373, at *2 (E.D. Va. 2010) (holding that a licensed architect with extensive experience reviewing architectural drawings is qualified to give expert testimony as to whether two different sets of architectural drawings contain meaningful architectural similarities).

More importantly, I believe his testimony on these subjects will assist the jurors in understanding the evidence at trial and determining facts at issue. Based on the foregoing analysis, I conclude that Mr. Schmitt should be permitted to offer opinions comparing "the selection and juxtaposition of standard functional elements in the floor plans of the two subject works" [Section G.2], and addressing "standard features and elements," "utilitarian elements," "*scenes a faire*" elements, and "elements or combination of elements common in the

construction/design industries" [Sections F and G.3].

Accordingly, Plaintiff's Motion to Exclude, In Part, Testimony and Report of Defendants' Expert Eugene Schmitt (doc. #83) is granted in part and denied in part.

B.      Defendants' Motions Challenging Expert Kevin Alter

The Trumbles have moved to strike Home Design's designation of Professor Kevin Alter as a rebuttal expert on two separate grounds.  Defendants' Rule 702 Motion to Exclude Opinions of Expert Kevin Alter (doc. #72) argues that Professor Alter's testimony would not satisfy the reliability requirements of Rule 702 because those opinions are not based on any verifiable methodology or independent research.  In short, the Trumbles maintain that Professor Alter's opinions are "pure *ipse dixit*" and would not be helpful to the triers of fact.  In a separate motion (doc. #73), Defendants argue that Professor Alter is not offering opinions that are "intended solely to contradict or rebut" the testimony of Mr. Schmitt and, therefore, his designation violates Fed. R. Civ. P. 26(a)(2)(C)(ii).[7]

While the format of his written report leaves much to be desired, Professor Alter apparently was asked "to opine on whether the Trumble design appears to have been copied or derived from the plans by HDS" and "to review the Expert Report" of Mr. Schmitt.  In Exhibit 1 of his report, Professor Alter purports to provide a "summary of [his] opinions and conclusions," as well as a description of the methodology he utilized to arrived at his opinions.

> In making my assessment, I reviewed each set of drawings and documents, comparing the respective layouts, massing, organization, character, details, and overall look and feel of each design.  I examined each design individually and compared the HDS design with the Trumble design.  I evaluated both the similarities and any differences between the two designs.

---

[7]Effective December 1, 2010, the operative provision became Rule 26(a)(2)(D)(ii).

> The method that I utilized in making this assessment is the same method that I have used as an architecture professor in my design classes over the last 18 years to assess whether students have created original work or whether they have improperly derived such work from other sources.  I believe this approach is commonly used by other professors of architecture for the same purpose, as well as distinguished design professors who attempt to ascertain the provenance of an architectural design.

*See* Report of Kevin S. Alter (doc. #72-1) attached as Exhibit A to Defendants' Rule 702 Motion to Exclude Opinions of Expert Kevin Alter.  Using this methodology, Professor Alter concludes that the Defendants' home design "was either copied or derived from the design by HDS." Professor Alter further believes that "there exists a substantial similarity based on the arrangement, selection and coordination of the vast majority of each design's respective architectural features" as outlined more specifically in Exhibit 3 ("Comparison Analysis HDS-2802 & Trumble") to his report.

Exhibit 2 to the Alter report offers a "direct comparison of the HDS and Trumble design" as reflected in Section E of Mr. Schmitt's report.  Professor Alter suggests that all of the differences cited by Mr. Schmitt are more properly characterized as "adjustments or minor differences," and "insignificant to the overall look and feel of the house."  Alter further contends that "Mr. Schmitt's statement that these minor adjustments would suggest a substantial difference between the two designs is incorrect."  Exhibit 2 also responds to Section F of the Schmitt report.  As for that portion of Schmitt analysis, Professor Alter opines that

> Schmitt's reasoning is incorrect.  While the HDS-2802 design includes many standard features, the particular selection, coordination and arrangement of these standard features represent an original architectural design.

> In general, I find Mr. Schmitt's report to be incorrect and misleading.  It is my opinion that the HDS-2802 and the Trumble design are substantially similar, and in this regard the Defendants' (Terry Trumble, et al.) work infringes on the design of the Plaintiff's (HDS).

Defendants' Rule 702 Motion (doc. #72) seeks to exclude Professor Alter's opinions in their entirety.  While I believe this motion sweeps too broadly, there are portions of Professor Alter's report and related opinions that cannot withstand scrutiny under Rule 702.  Professor Alter certainly is qualified to render expert opinions in this case.  *Cf. Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 5175170, at *1 (W.D. La. 2010) (in denying plaintiff's motion to exclude a defense expert, the court concluded that the expert was qualified based upon his extensive experience as a licensed architect); *The Harvester, Inc. v. Rule Joy Trammell N Rubio, LLC*, 2010 WL 2653373, at *3 (holding that an expert can use his 30 years of architectural experience to undertake "a detailed, systematic" comparison of architectural drawings "to "determine similarities . . . and compare[] them in more detail 'to find out why they were similar'").  However, for purposes of Rule 702, it is not enough that the proffered expert has specialized education, training or experience.  The expert must use those qualifications to formulate opinions that are both reliable and helpful to the trier of fact.

An expert drawing on experience "must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts."  The Advisory Committee Notes to Rule 702 warn there is an increased potential for unreliability, and therefore exclusion, where the expert's opinions and analysis are largely subjective.  Professor Alter's Exhibit 3 illustrates that shortcoming.  By his own admission, Professor Alter merely did a side-by-side comparison of the HDS-2802 design and the Trumbles' design.  Based upon that assessment, Professor Alter opines in his Exhibit 3 that "the plans of the respective designs are equivalent," citing as an example "[t]he position, dimension and character of the entry foyer." To further support this point, Professor Alter contends that

- The foyers are in the same location
- The foyers are the same size
- The foyers are equally grand and create an equivalent feeling upon entry
- The view from the foyers into the dining/family or great rooms is the same
- The foyers have the same relationship to the dining/family room and great rooms
- The foyers have the same relationship to bedrooms 2, 3 and 4

Professor Alter provides an equally unsophisticated analysis for the separate living spaces in the HDS-2802 design and the Trumbles' design.  I am confident that the triers of fact in this case are fully capable of understanding and evaluating these same points without Professor Alter's help.

In short, Exhibit 3 of the Alter report will not assist a layperson to understand the evidence or determine the facts at issue.  *Cf. Patsy's Italian Restaurant, Inc. v. Banas*, 531 F. Supp. 2d 483, 485 (E.D.N.Y. 2008) (holding that the plaintiff had failed to show why the proffered expert's testimony would assist the jury); *United States v. Naegele*, 471 F. Supp. 2d 152, 159 (D.D.C. 2007) (finding that the jurors were just as capable of listening to audio records as the expert and needed no assistance in deciding what they heard).  As the Tenth Circuit has acknowledged

> [t]here is no more certain test for determining when experts may be used then the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003).  *Cf. Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 103 (D. Conn. 2006) (a court should not admit expert testimony that is directed solely to lay matters that the jury is capable of understanding and deciding).

Professor Alter concludes in Exhibit 3 that "the several minor differences" in the subject

designs "are almost entirely trivial differences and not indicative of independent creation."[8]

Given the simplicity of Professor Alter's methodology, this conclusory opinion is nothing more

than *ipse dixit.*   An expert should provide specialized analysis, not bald pronouncements.   *Cf. In*

*re Trasylol Products Liability Litigation*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010) (finding

that a proffered expert that merely "regurgitates" facts and then reaches conclusory opinions

assumes the role of advocate and invades the province of the jury);   *Rambus Inc. v. Hynix*

*Semiconductor Inc.*, 254 F.R.D. 597, 609 (N.D. Cal. 2008) (holding that an expert's conclusory

opinion regarding copying would not assist the jury to understand the evidence or to determine a

fact in issue).

While this court will exclude the opinions expressed in Professor Alter's Exhibit 3, I find

that other opinions in Professor Alter's report are permissible under Rule 702.   Mr. Schmitt

apparently will offer opinions regarding the "identification of architectural similarities and

differences of the plan at issue and the plan utilized to construct the Trumble home and

identification of similarities and differences of the plan at issue and the as-built Trumble home."

Professor Alter's Exhibit 2 purports to rebut the analysis set forth in Sections E and F of Mr.

Schmitt's report.   More specifically, Professor Alter suggests that Mr. Schmitt's reasoning and

conclusions are incorrect, and that the two plans are substantially similar.   *Cf. Interplan*

*Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4065465, at *11 (in denying plaintiff's motion to

strike a defense expert, held that the defense expert should be permitted to compare floor plans

---

[8]Professor Alter's dismissal of these differences as trivial may miss the point, however, if
Home Design is only entitled to a "thin" copyright.   *Home Design Services, Inc. v. David*
*Weekley Homes, LLC*, 548 F. Supp. 2d at 1313 ("modest dissimilarities are more significant" in
evaluating architectural home designs because "there are only a finite number of ways a
rectangle can be divided into bedrooms, baths, kitchen living room, closets and so on").

25

to provide an opinion as to whether particular plans could be generated without copying; concluded that the expert's opinion was "reliable in that it is based upon his extensive professional experience); *A Slice of Pie Productions, LLC v. Wayans Brothers Entertainment*, 487 F. Supp.2d at 40-41 (allowing expert testimony regarding whether two works share similarities that are probative of copying).

Defense counsel correctly notes dissimilarities in the methodologies utilized by the competing experts, suggesting that Mr. Schmitt's approach is more sophisticated and reliable. Although Rule 26(a)(2)(D)(ii) requires that a rebuttal expert address "the same subject matter" identified by the opposing expert, the rebuttal expert is not necessarily bound by the same methodology. *Cf. TC Systems Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002). More importantly, the court's "gatekeeping" responsibilities under Rule 702 do not turn on the "correctness" of an expert's opinions. Given that the court must err on the side of admissibility, I find that Professor Alter should be permitted to offer opinions that touch upon the architectural similarities and differences between the designs at issue in this case.

While the court will not strike Exhibit 2 in its entirety, Professor Alter's opinions regarding the "originality" of the HDS-2802 design are problematic. Professor Alter states in Exhibit 2 that the HDS-2802 design "represent[s] an original architectural design." He then concludes that "Defendants' (Terry Trumble, et al) work infringes on the design of the Plaintiff's (HDS)." Professor Alter elaborated on his "originality" analysis during the following colloquy at his deposition:

> Q.    Because as you stated earlier, you have not anywhere in your report
> analyzed the element of originality. Correct?

\* \* \*

26

A.      I have not analyzed the elements of originality, that's true.

Q.      And it was your assumption when you received the HDS2802 plan that it was in fact an original work.  Correct?

*   *   *

A.      That is correct, although I should be clear.  I assumed that when I received it, it's not like I just followed that blindly.  I did also look at the HDS plan, and I think I said that I thought it had enough, shall we say, novelty, to understand it as something that could be original.  And then with the understanding that this was not copied from something else, which was an assumption, I then felt comfortable beginning with the point that was an original work.

Q.      So you didn't do any independent research as to whether the HDS28-2 was copied from somebody else.  Correct?

A.      That's correct.

*See* Exhibit B, p. 114, attached to Defendant's Rule 702 Motion to Exclude Opinions of Expert Kevin Alter.

By his own admission, Professor Alter's opinions on "originality" are wholly speculative and based on nothing more than assumption.  *Cf. Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n. 4 (10th Cir. 2006) ("[I]t [is] not 'manifestly unreasonable' for the district court to conclude that [the expert's] opinions lacked foundation because they were based on 'the self-serving statements of an interested party.'").  Rule 702 requires more.  *Cf. Masterson Marketing, Inc. v. KOL Recreation Corp.*, 495 F. Supp. 2d 1044, 1051 (S.D. Cal. 2007) (criticizing an expert report that offered nothing more than conclusions based on incomplete suppositions); *Chirco v. Charter Oak Homes, Inc.*, 2003 WL 25697322, at *2 (E.D. Mich. 2003) (holding that expert testimony should be excluded if it is speculative, conjectural or based on assumptions "so unrealistic and contradictory as to suggest bad faith"); *Bethea v. Bristol Lodge Corp.*, 2002 WL 31859434, at *8 (E.D. Pa. 2002) (excluding an expert's proffered opinion that

27

represented nothing more than a conclusory statement).  *See also Quiet Technology DC-8, Inc. v. Hubel-Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003) (recognizing that "one may be considered an expert but still offer unreliable testimony").  To the extent that Professor Alter testifies regarding the HDS-2802 design, he may not offer any opinions regarding the "originality" of that design.  Similarly, Professor Alter may not offer an opinion regarding "infringement" that is tantamount to a legal conclusion.  *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4065465, at *13 (excluding an expert's opinions regarding the originality of plaintiff's designs as "they are improper legal opinions" and "veer too close to a legal conclusion regarding "originality"); *Loops, LLC v. Phoenix Trading Inc.,* 2010 WL 3041866, at *3 (W.D. Wash. 2010) (expert testimony consisting of legal conclusions is not helpful to the trier of fact).

Defendants have separately moved, under Rule 26(a)(2)(C), to strike portions of Professor's Alter report they contend are not proper rebuttal opinions.  The Trumbles argue that that Professor Alter's opinions do not address the same aspects of liability/copying as Mr. Schmitt "and fail to respond to multiple other issues addressed by Schmitt."  Moreover, Defendants argue that Alter's Exhibit 3 contains independent opinions that are unrelated to Mr. Schmitt's report.  The latter argument is moot given that I am excluding Professor Alter's Exhibit 3 on alternative grounds.  However I will grant, in part, Defendants' Motion to Strike Opinions of Plaintiff's Rebuttal Expert Kevin Alter.

Originality is an essential element of Plaintiff's *prima facie* case.  Having successfully moved to exclude Mr. Schmitt's opinions on "originality," it necessarily follows that Home Services cannot offer "rebuttal" opinions on the same issue.  *See NIC Holding Corp. v. Lukoil*

*Pan Americas*, 2009 WL 996408, at *3-4 (E.D.N.Y. 2009).  *Cf. Johnson v. Grays Harbor*

*Community Hospital*, 2007 WL 4510313, at *2 (W. D. Wash. 2007) (when plaintiff elected to

designate his experts as purely rebuttal experts, he effectively limited his experts to rebuttal

testimony which could be offered only after defendants' experts had offered evidence on the

same subject matter).  Plaintiff must accept the consequences of its decision not to designate

Professor Alter as an affirmative expert.  *See 1550 Brickell Associates v. QBE Insurance Corp.*,

2010 WL 1947636, at *2 (S.D. Fla. 2010).  *Cf. In re Air Crash Near Kirksville, Missouri*, 2007

WL 2363505, at *1 (E.D. Mo. 2007) ("[R]ebuttal evidence may be used to challenge the

evidence or theory of an opponent - and not to establish a case-in-chief.").  Defendants' Motion

(doc. # 73) is granted to the extent that it seeks to preclude Professor Alter from offering opinion

testimony regarding the "originality" of the HDS-2802 design.

     C.     <u>Plaintiff's Motion to Exclude, In Part, Testimony and Report of Defendants'</u>
               <u>Expert Gregory Taylor</u>

     The Trumbles have designated Gregory Taylor as their expert on issues relating to

damages under 17 U.S.C. § 504(b), which permits a copyright owner to recover actual damages

suffered as a result of the infringement "and any profits of the infringer that are attributable to

the infringement and are not taken into account in computing the actual damages."  This statute

specifies that "[i]n establishing the infringer's profits, the copyright owner is required to present

evidence only of the infringer's gross revenue, and the infringer is required to prove his or her

deductible expenses and elements of profits attributable to factors other than the copyrighted

work."  *Id.*  Mr. Taylor has prepared a written report that purports to "calculate reasonable

damages [that would be recoverable by Home Design]. . . based on the cost of plans, project

revenues, direct expenses, and allocated indirect expenses."  Defendants' expert suggests that an

appropriate damage amount would be $808.00.  *See* Exhibit 1 (doc. #82-1) attached to Plaintiff's

Motion to Exclude, In Part, Testimony and Report of Defendant's Expert Gregory Taylor.

Home Design has moved to exclude from trial various opinions set forth in Mr. Taylor's

report.  More specifically, Plaintiff challenges Taylor's opinions and/or assumptions regarding

Defendants' business income and expenses as unreliable in view of the unverified information on

Schedule C of Trumble Builders' 2006 tax return.  Home Design faults Mr. Taylor for not

investigating the accuracy of the Schedule C information, reviewing underlying documentation,

or interviewing the Trumbles' accountant to authenticate that information.  Home Design also

takes exception to Mr. Taylor's methodology in allocating overhead expenses, as well as his

deductions for "construction and management fees," "labor analysis," "closing costs and

commissions," "assumed plan cost," and "allocation of profit."  Plaintiff contends that Mr.

Taylor's reliance on generally accepted accounting principles ("GAAP") does not coincide with

copyright law, and summarily dismisses the expert's analysis as "novel" or "complete

nonsense."  I am not persuaded that any of these arguments warrant the exclusion of Mr.

Taylor's opinions.

Home Design does not dispute Mr. Taylor's qualifications.  His curriculum vitae

indicates that he has a masters degree in accountancy and thirty years of professional accounting

experience.  Mr. Taylor is a member of the American Institute of Certified Public Accountants

and the American Board of Forensic Accounting.  In the past four years, Mr. Taylor has testified

in trial or arbitration proceedings on forty-four occasions.  The court finds that Mr. Taylor is

qualified and has the requisite specialized knowledge to render opinions relating to damages in

this case.  I further find that Mr. Taylor has used his training and practical experience to evaluate

the economic losses alleged by Home Design, and that such testimony would assist the jury.
The only Rule 702 element in dispute relates to the reliability of Mr. Taylor's proffered opinions.

Plaintiff challenges Mr. Taylor's failure to pursue other sources of information or
consider additional data, however, those perceived shortcomings do not justify excluding his
testimony under Rule 702.  *Cf. Cummings v. Standard Register Co.*, 265 F.3d 56, 65 (1st Cir.
2001) (an expert's failure to incorporate or to take into account other relevant data does not
render that expert's opinions inadmissible); *Potoski v. Wilkes University*, 2010 WL 3811973, at
*7 (M.D. Pa. 2010) (holding that what the expert did or did not rely upon in forming his opinions
goes to the weight of his testimony); *Weirich v. Horst Realty Co., LLC*, 2009 WL 920960, at *5
(E.D. Pa. 2009) (noting that experts "are not required to review every record" in order to reach a
reliable conclusion that has proper factual support); *Fisher v. Werner Enterprises, Inc.* 2005 WL
6001584, at *2  (N.D. Ind. 2005) (holding that an expert's failure to consider "every conceivable
piece of evidence" does not mean that the expert's opinion lacked a reliable basis; the proper
means to challenge the expert's report is not to exclude the testimony altogether, but instead test
the accuracy, consistency and credibility of the opinions through vigorous cross-examination,
presentation of contrary evidence, and argument of counsel); *Groobert v. President and
Directors of Georgetown College*, 219 F. Supp. 2d 1, 13 (D.D.C. 2002) (holding that an expert's
decision not to consider additional sources of information, including tax returns, goes to the issue
of credibility rather than reliability).

Mr. Taylor's report indicates that in addition to the 2006 Schedule C, he also reviewed
appraisal reports, receipts, invoices, bank statements and draw requests from June 23, 2006

through February 14, 2007. *Cf. Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 443 (D. Del. 2007) (noting that standards established by the American Institute of Certified Public Accountants permit experts to base assumptions on facts, presumptions from facts or assumptions provided by the client or counsel). "'[W]eakness in the factual basis of an expert witness'[s] opinion,' such as the numbers used by the plaintiff . . . to compute damages, 'bear on the weight of the evidence rather than on its admissibility.'" *KCH Services, Inc. v. Vanaire, Inc.*, 2010 WL 1416672, at *2 (W.D. Ky. 2010). While missing data may implicate the accuracy of an expert's calculations or opinions, those discrepancies go to the weight of the expert's testimony and are better addressed through cross-examination. *Ostrowiecki v. Aggressor Fleet, Ltd.*, 2008 WL 3166803, at *3-4 (E.D. La. 2008) (holding that an expert's determination as to which documents to rely on, while excluding others, goes to the credence to be given his testimony, and does not necessarily render his opinions unreliable or unsound).

While this court is not prepared to state unequivocally that Mr. Taylor's methodology was the best or that another expert would not have pursued other sources of information, I am not also not inclined to exclude Mr. Taylor's opinions simply because Plaintiff disagrees with his methodology. *Cf. Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."); *In re MDL-731 Tax Refund Litigation*, 989 F.2d 1290, 1299 (2d Cir. 1993) (held that the trial court properly admitted expert testimony regarding property valuations; noted that defendants had "ample opportunity during cross-examination to explore any subjective considerations underlying the experts' appraisals and to cast doubt on the reliability of those

32

appraisals"). This court cannot conclude that Mr. Taylor's testimony is so fundamentally unsound that it would not assist the jury.

Reduced to its essence, Plaintiff's motion argues that the Trumbles, as the defendants in this copyright action, have failed to sustain their burden of proof in attempting to allocate deductible expenses and elements of profit. Home Design insists that "any doubt regarding the deductibility of expenses resulting from an infringer's failure to properly document its costs must be resolved against the infringer" and that "any doubt as the correctness of the profit calculation . . . should be resolved in favor of the plaintiff." *See* Plaintiff's Motion to Exclude, at 14. Home Design seems to suggest that because "all doubt regarding deductible expenses is to be resolved in [Plaintiff's] favor," the court necessarily must conclude that Mr. Taylor's opinions are unreliable.

In deciding the pending motion, however, this court is not required to weigh the correctness or persuasiveness of Mr. Taylor's opinions. *See Cook v. Rockwell International Corp.*, 580 F. Supp. 2d at 1085 (noting that a party offering evidence under Rule 702 is not required to prove that the expert is "indisputably correct;" expert evidence "can be 'shaky' and yet still admissible"). *Cf. Potoski v. Wilkes University*, 2010 WL 3811973, at *6 ("In performing its gate-keeping function, the court does not weigh the evidence relied upon by an expert or determine whether it agrees with the expert's conclusions."). While Plaintiff may be inclined to place little, if any, weight on Mr. Taylor's anticipated testimony, any perceived weaknesses in that testimony are better explored through cross-examination and during counsel's closing argument at trial. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 596 ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). *Cf. Paradigm Alliance, inc. v. Celeritas Technologies,LLC*, 2009 WL 3855677, at *3 (D. Kan. 2009) (holding that defendant's challenges directed to the validity of plaintiff's expert's assumptions go to the weight of the expert's opinions rather than admissibility under Rule 702)

Accordingly, Home Design's motion to exclude the testimony and opinions of Mr. Taylor (doc. # 82) is denied.

II.     *Defendants' Motion to Preclude James Zirkel from Offering Expert Opinions at Trial*

The Trumbles have moved, pursuant to Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 701, to preclude Mr. Zirkel from offering expert testimony at trial.  Defendants note that Mr. Zirkel was not designated by Home Design Services as an expert witness in conformity with the court's Rule 16 scheduling order.  The Trumbles concede that Mr. Zirkel should be allowed to provide "factual testimony about his knowledge of the circumstances of his alleged creation of the plan at issue, and the facts and circumstances related to the design of same."  *See* Defendants' Reply in Support of Motion to Preclude James Zirkel from Offering Expert Opinions at Trial (doc. #15), at 3.  However, the Trumbles contend that Mr. Zirkel "cannot go beyond factual perceptions and conclude that the work at issue and the works inclusive in the HDS portfolio are in fact original."  *Id.*  Defendant argue that such testimony does not qualify as lay witness testimony under Rule 701 as his opinions are not based on his own perception, require technical or specialized knowledge within the scope of Fed. R. Evid. 702, and would not be helpful to the trier of fact.

Not surprisingly, Plaintiff holds a contrary position.  Home Design notes that the

originally of the HDS-2802 work turns on whether the work was independently created and not

copied from any source, and whether it possess a "minimal degree of creativity." *See* Plaintiff's

Response to Defendants' Motion (doc. #110), at 3. Plaintiff argues that as the creator of HDS-

2802, Mr. Zirkel should be permitted to testify to the factual process he utilized to independently

create the work, including

> how he designed the plan, how he did not copy from anything to create it, what
> creative and novel features it has, why he positioned certain features in the
> manner he did, and how he had not seen another plan like it when he designed it.

*Id.* Home Design further asserts that Mr. Zirkel may offer "any *opinions* relating to the

originality of the 2802 because he is qualified to give such opinions, and no expert testimony is

required to prove originality in copyright infringement cases." *Id.* at 5. Finally, Home Design

suggests that even if Mr. Zirkel should have been disclosed as an expert witness under Rule

26(a)(2)(a), that omission was substantially justified and harmless, and does not provide an

independent basis for excluding his opinions at trial.

The court addressed Defendant's motion during the hearing on October 26, 2010.

Defense counsel expressed particular concern that Mr. Zirkel's trial testimony would mirror his

Declaration in which he stated

> 5.      I personally created the architectural home design known as the HDS-
> 2802 (the "2802"). The 2802 was not copied from any other work or
> home design plan; rather, it was independently created by me.
> Furthermore, at the time I created the 2801, I had not seen another design
> quite like it. In fact, given the novel angles used, as well as the selection
> and coordination of the rooms, spaces and elements, the 2802 is clearly an
> original architectural work.

*See* Exhibit 1 (doc. #64-1) attached to Plaintiff's Motion for Partial Summary Judgment. While

Defendants apparently do not contest that HDS-2802 is an architectural work for purposes of the

copyright laws, they believe that Mr. Zirkel should be precluded from offering any opinions regarding or attesting to the "originality" of the 2802 architectural design from the perspective of the home design industry as a whole.[9]

Rule 701 of the Federal Rules of Evidence permits a lay witness to offer opinion testimony, provided those opinions are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." "Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001). *See also United States v. Blake*, 284 Fed. Appx. 530, 539 (10th Cir. 2008) (noting that the "distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by experts in the field"); *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 369 F. Supp. 2d 155, 157 (D. Mass. 2005) (holding that lay opinion testimony under Rule 701 is proper only when the witness states "his conclusions based upon common knowledge or experience").

The 2000 Amendments to Rule 701 were intended to ensure that the reliability requirements of Rule 702 would not be circumvented by proffering expert opinions in the guise of lay testimony. *Cf. Brown v. Farmers Insurance Company, Inc.*, 2007 WL 1452994, at *1

---

[9]During the motion hearing on October 26, 2010, Plaintiff's counsel advised the court that Mr. Zirkel will not testify at trial using the term "original architectural work." Defense counsel insisted, however, that Plaintiff's concession did not render her motion moot.

(W.D. Okl. 2007).  The Advisory Committee Notes to the 2000 Amendments make clear that "any part of a witness' testimony that is based upon scientific, technical or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules."  *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 369 F. Supp. 2d at 158.

Certainly, Mr Zirkel should be permitted to provide factual testimony describing his creation of the HDS-2802 design, including the impetus for the design, the objectives underlying the design, and the process he followed in selecting and configuring the elements and/or features of the design.  These are all facts that are rationally based on the perception of this witness and helpful to a clear understanding of Mr. Zirkel's testimony or the determination of a fact in issue. I further believe, consistent with Rule 701, that Mr. Zirkel could testify that when he was designing the HDS-2802 plans, he personally was not aware of any "other design quite like it."

> The "line between expert testimony under Fed.R.Evid 702 . . . and lay opinion testimony under Fed.R.Evid. 701 . . . is not easy to draw.  However, a witness does not become an expert simply by testifying about "the particularized knowledge that the witness has by virtue of his or her position in the business." Nevertheless, if the proponent of such testimony failed to designate the witness as an expert, the party "can anticipate that the court will monitor and restrict the contours of his testimony at trial."

*Morin v. State Farm Fire and Casualty Co.*, 453 F. Supp. 2d 173, 175 (D. Me. 2006).

I conclude that Mr. Zirkel should not be permitted to offer opinions that purport to address the novelty or "originality" of the HDS-2802 design from the perspective of the home design industry as a whole.  That opinion necessarily would draw upon technical and specialized knowledge that is far beyond the understanding of an untrained layperson.  As the court noted in *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002),

> Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.

I do not believe that a lay juror could review the HDS-2802 plan and immediately perceive the originality of that design relative to the home design industry. The latter opinion could only be formed through specialized training or knowledge, which plainly falls outside the scope of Rule 701. *Cf. LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) ("a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person").

Even when evaluated under Rule 702 standards, Mr. Zirkel's opinions on "originality" are deficient. In the post-*Daubert* era, expert opinions

> are no longer admissible simply by showing that someone is well-educated or experienced in a given area and that he/she had drawn some conclusions about issues in the case. It does not suffice for an expert to say, in effect, "trust me, I know."

*Threet v. Correctional Health Care Management of Oklahoma, Inc.*, 2009 WL 3335596, at *4 (W.D. Okl. 2009). Yet, Mr. Zirkel would testify that "the 2802 is clearly an original architectural work" in light of "the novel angles used, as well as the selection and coordination of the rooms, spaces and elements." That statement is pure *ipse dixit*. *Wilson v. Taser International, Inc.*, 2010 WL 3787106, at *3 (D. Colo. 2010) (holding that an expert's qualifications may not serve to replace adequate factual underpinnings for the expert's opinions). *Cf. Graves v. Mazda Motor Corp.*, 2010 WL 5094286, at *3 (10th Cir. 2010) (holding that the trial court properly excluded plaintiff's expert whose opinions "rest[ed] on no more than his say so").

Home Design argues, in the alternative, that it should be permitted to designate Mr. Zirkel as an expert pursuant to Rule 26(a)(2).  Plaintiff reasons that a belated designation of Mr. Zirkel is substantially justified and would not result in prejudice to Defendants.

Plaintiff concedes that on or about July 22, 2009, Mr. Zirkel was disclosed pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i) as an individual who may have discoverable information that Home Design might use to support its claims.  Rule 26(a)(1)(A)(i) requires the disclosing party to identify "the subjects of [the discoverable] information" that each identified individual might have.  To that end, Home Design indicated that Mr. Zirkel possessed "general information as to the creation of the plan at issue and the copyright infringement," as well as "knowledge as to corporate policies and procedures with respect to the Plaintiff corporation."  *See* Exhibit 1 (doc. # 110-1) attached to Plaintiff's Response to Defendants' Motion.  Nothing in this mandatory disclosure put Defendants on notice that Mr. Zirkel would offer expert opinions under Rule 702. *See* Fed. R. Civ. P. 26(a)(2)(A) ("In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence

under Federal Rule of Evidence 702, 703 or 705.").[10]

     If Home Design was inclined to elicit expert testimony from Mr. Zirkel, it was obligated to supplement its Rule 26(a) disclosures in a timely manner. *See* Fed. R. Civ. P. 26(e). A party that fails to supplement its disclosures in a timely manner "is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c). *Cf. Superior Aluminum Alloys, LLC v. United States Fire Insurance Co.*, 2007 WL 1850859, at *3 (N.D. Ind. 2007) (found that plaintiff's tardy designation of an expert witness was not substantially justified where the expert's identity and opinions were known to the plaintiff well before the expert disclosure deadlines set by the court). Plaintiff and its counsel made a conscious decision not to designate Mr. Zirkel as an expert. *Cf. Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 62, 67 (D. Me. 2005) (while defendant's employees could offer opinions under Rule 701 to the extent those opinions were rationally based on the employee's perception, these same employees had not been disclosed as expert witnesses under the terms of the scheduling order; having elected to rely upon these employees as non-expert witnesses, defendant would be precluded from eliciting expert testimony at trial). I see no reason to relieve Home Design of the adverse consequences of that judgment call. *Cf. Griffith v. Eastern Maine*

---

[10]Home Design argues in its response brief that Mr. Zirkel would not be required to prepare a written report pursuant to Fed. R. Civ. P. 26(a)(2)(B) as he was not "retained or specially employed to provide expert testimony in [this] case or one whose duties as the party's employee regularly involve giving expert testimony." While Plaintiff's position finds support in reported decisions, *see, e.g., Downey v. Bob's Discount Furniture Holdings, Inc.*, 2011 WL 117263 (1st Cir. 2011) and *Towne v. Shasta County*, 2006 WL 3437884 (E.D. Cal. 2006), this court can resolve the pending motion without addressing the applicability of Rule 26(a)(2)(B). I would note, however, that the recent amendments to Rule 26 now require a party to state the subject matter on which a non-retained expert is expected to present evidence under Rule 702, 703 or 705, and provide a summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a(2)(C).

*Medical Center*, 599 F. Supp. 2d 59, 67 (D. Me. 2009) (in denying plaintiff's motion for leave to designate an expert witness two months after the court-ordered deadlines, the court noted that "[t]he need for relief from one's own tactical decisions . . . hardly constitutes substantial justification for the late designation").

Subject to the foregoing analysis and the limitations therein, I will grant in part Defendants' Motion to Preclude James Zirkel from Offering Expert Opinions at Trial (doc. # 70).

## CONCLUSION

For the reasons set forth above, this court ORDERS as follows:

1.       "Defendants' Fed. R. Evid. 701 and Fed. R. Civ. P. 26 Motion to Preclude James Zirkel from Offering Expert Opinions at Trial" (doc. #70) (filed June 18, 2010) is granted in part as set forth in this Order.

2.       "Defendants' Rule 702 Motion to Exclude Opinions of Expert Kevin Alter" (doc. # 72) (filed June 18, 2010) is granted in part as set forth in this Order.

3.       "Defendants' Motion to Strike Opinions of Plaintiff's Rebuttal Expert Kevin Alter" (doc. # 73) (filed June 18, 2010) is granted in part as set forth in this Order.

4.       "Plaintiff's Motion to Exclude, In Part, Testimony and Report of Defendants' Expert Gregory Taylor" (doc. # 82) (filed June 30, 2010) is denied.

5.       "Plaintiff's Motion to Exclude, In Part, Testimony and Report of Defendants' Expert Eugene Schmitt" (doc. # 83) (filed on June 30, 2010) is granted in part and denied in part as set forth in this Order.

**Advisement to the Parties**

Within fourteen days after service of a copy of a Magistrate Judge's order, a party may serve and file written objections to the order.  Fed. R. Civ. P. 72(a).  "A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  *See also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  Failure to make timely objections to the Magistrate Judge's order(s) may bar review by the District Judge and will result in a waiver of the right to appeal.  *See Riviera Drilling & Exploration Co. v. Gunnison Energy Corp.*, 2011 WL 14461 (10th Cir. Jan. 5, 201) ("the firm waiver rule ordinarily prevents us from reviewing a magistrate judge's ruling if the aggrieved party failed to file proper objections to that ruling in the district court") (citations omitted);  *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)").

DATED this 14th day of February, 2011.

BY THE COURT:


 s/Craig B. Shaffer
United States Magistrate Judge